**Opinion filed April 4, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00330-CV
_____

## IN THE INTEREST OF G.L.Y., A CHILD

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-3082-PC**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of both the mother and the unknown father of G.L.Y. The mother has filed a notice of appeal from the termination order. We affirm.

Appellant presents two issues for review. In those issues, she asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of G.L.Y.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To

determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that Appellant committed four of the acts listed in Section 161.001(1). The trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child, that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that Appellant had constructively abandoned the child, and that Appellant had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of the child. *See id.* § 161.001(1)(D), (E), (N), (O). Appellant does not challenge the findings made pursuant to Section 161.001(1). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the child's best interest. *See id.* § 161.001. The trial court also found that termination was in the child's best interest. *See id.* § 161.001(2).

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one

or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services became involved with G.L.Y. in August 2011, three days after G.L.Y. was born. According to the Department's conservatorship supervisor, Michelle White, the Department received an intake regarding G.L.Y. when G.L.Y. and Appellant were still in the hospital. The nurses at the hospital were concerned with Appellant's inability to take care of G.L.Y., including feeding her, changing diapers, and comforting her. Appellant was not bonding or attempting to bond with G.L.Y. At the hospital, Appellant also expressed concerns about her inability to take care of her baby.

The record shows that Appellant has had four other cases with the Department. Three of the cases involved neglectful supervision, and one involved physical abuse. These cases ultimately resulted in the removal of Appellant's two other children from her care and their placement with relatives. White testified that Appellant is bipolar and schizophrenic and that she refuses to take medication. Appellant agreed that she had been diagnosed with bipolar disorder plus schizophrenia and that she had had drug and alcohol problems.

Appellant was ordered to complete various services as part of her family service plan. She did not complete her services, which included a referral to "MH-MR," and she failed to stay in contact with the Department. At the time of the final hearing in this case on August 2, 2012, Appellant had visited G.L.Y. only one time. Appellant admitted using cocaine while this case was pending. Nothing in the record reveals that Appellant could provide G.L.Y. with a safe and appropriate home environment. She lived in an apartment with a man, but she did not know whose apartment it was. Appellant agreed that she was not able to provide a good home for a child.

When G.L.Y. left the hospital, she was placed with a maternal cousin that had adopted one of Appellant's other children. G.L.Y. remained in that placement at the time of the final hearing. The Department's goal for G.L.Y. was to be adopted by the cousin, who had expressed a desire to adopt G.L.Y. White stated that the cousin could provide a safe, stable, and permanent home environment. White believed that termination of Appellant's parental rights would be in G.L.Y.'s best interest.

Appellant testified at trial that she wanted what was best for G.L.Y. Appellant requested that G.L.Y. remain where she is. When asked if she wanted her rights to G.L.Y. terminated,

Appellant responded: "Yeah.  I want her to just to continue on another life.  I want to continue on another life."  Appellant, however, did "not really" want her cousin to adopt G.L.Y.

Based upon the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in G.L.Y.'s best interest for Appellant's parental rights to be terminated.  The evidence is both legally and factually sufficient to support the best interest finding.  We overrule Appellant's first and second issues.

The trial court's order of termination is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

April 4, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

4